IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Magistrate Judge Boyd N. Boland

Civil Action No. 06-cv-02138-WYD-BNB

CIMAREX ENERGY CO.,

Plaintiff,

v.

BANK OF AMERICA, N.A.,

Defendant.

_____

# ORDER
_____

This matter is before me on **Defendant Bank of America's Motion for More Definite Statement** [Doc. # 5, filed 11/1/2006] (the "Motion").  The Motion is DENIED.

Defendant ("Bank of America") seeks a more definite statement pursuant to Fed. R. Civ. P. 9(b) with respect to the plaintiff's claims for negligent misrepresentation and deceit by false representation.  Rule 9(b) requires that "[i]n all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity."  This provision of the rule has been interpreted as follows:

> [T]he Tenth Circuit requires a complaint alleging fraud to set forth the time, place and content of [each] allegedly false representation, the identity of the party making the false statements, and the consequences thereof.  Simply put, this means that the party alleging fraud must set out the "who, what, when, where, and how" of each alleged misrepresentation or fraudulent act.

A.J. Plastic Products, Inc. v. Sandretto USA, Inc., 2006 WL 618149 (D. Kan. March 10, 2006) (internal citations, quotations, and notes omitted).  The specificity requirement of Rule 9(b)

recently was further explained:

> Fed. R. Civ. P. 9(b) requires averments of fraud to be pled with particularity, so as to give a defendant fair notice of the plaintiff's claims and the factual ground upon which they are based.  To satisfy this particularity requirement, a plaintiff is generally required to set forth the time, place and contents of the false representation, the identity of the party making the false statements, and the consequences thereof.  Of course, where the fraud is allegedly committed by omission, one cannot set forth the "time, place and contents" of something that was never said in these circumstances, it is sufficient under Rule 9(b) for the [plaintiff] to allege the particular information that should have been disclosed, the person who should have disclosed it, and the approximate time or circumstances in which the information should have been disclosed.

Securities and Exchange Comm. v. Nacchio, 2006 WL 2793149 *3 (D. Colo. Sept. 27, 2006) (internal citations and quotations omitted).

Here, the complaint alleges:

(1)     In December 2004, Cimarex began discussions to acquired Magnum Hunter Resources Inc. ("Magnum Hunter"), *Complaint* at ¶9, and acquired Magnum Hunter and its subsidiaries on June 7, 2005, id. at ¶43;

(2)     Of particular concern here, Cimarex acquired Prize Energy, a subsidiary of Magnum Hunter which held a one-half interest in an oil and gas lease (the "Baker Lease"), id. at ¶¶11-13;

(3)     Bank of America was both the trustee of the Baker Trusts, lessor of the Baker Lease to Prize Energy, and a member of Magnum Hunter's lending group, id. at ¶¶2, 20;

(4)     On January 28, 2005, a lawsuit was filed in Texas state court (the "Texas Lawsuit") against Bank of America, as trustee of the Baker Trusts, and others alleging that the Baker Lease  had terminated due to a "failure to produce in paying quantities beginning in 2001";

id. at ¶¶30, 33;

(5)     On February 15, 2005, Jeff A. Anderson, a vice president of Bank of America, signed a Ratification Agreement on behalf of the Baker Trusts stipulating and agreeing that (a) "the Baker Lease is currently in full force and effect and that the term of the Lease has been continuously perpetuated since April 23, 1971, by either the production of oil and/or gas in paying quantities or operations or both" and (b) "each of the mineral owners [including the Baker Trusts] hereby waives and releases any and all claims that the Lease terminated prior to the date of execution of this instrument for any reason whatsoever," id. at ¶¶37, 40;

(6)     On April 22, 2005, Cimarex met with Bank of America and Bank of America indicated that it had conducted its own internal investigation to evaluate the Texas Lawsuit before it signed the Ratification Agreement, id. at ¶¶43-44;

(7)     Cimarex paid approximately $30,000,0000 more for Magnum Hunter than it would have if Bank of America had not signed the Ratification Agreement, id. at ¶14;

(8)     "Upon information and belief," before Cimarex closed on its acquisition of Magnum Hunter, Bank of America reversed its position as stated in the Ratification Agreement, id. at ¶53;

(9)     On July 27, 2006, Jeffrey S. Anderson, a vice president of Bank of America, signed an agreement on behalf of the Baker Trusts in which Bank of America took the position that the Baker Lease had expired in 2001. Id. at ¶¶56-57.  Bank of America received $300,000 and other consideration for signing this agreement, id. at ¶57; and

(10)     Bank of America did not tell Cimarex of its intention to change its position with respect to the Ratification Agreement or of events surrounding the consideration or execution of the agreement in which it changed its position with respect to the Ratification Agreement.  Id. at ¶55.

These factual allegations underlie Cimarex's claims for negligent misrepresentation and deceit by false representation.

I find that the complaint is detailed and adequately alleges fraud with specificity.  In particular, it adequately alleges the "who, what, when, where, and how" of the alleged misrepresentations, and it certainly does so with sufficient particularity to give Bank of America fair notice of Cimarex's claims and the factual grounds upon which they are based.

Bank of America also argues that the allegations are not sufficiently specific under Rule 9(b) because Bank of America occupied two roles in this matter--as trustee for the Baker Trusts and as a member of Magnum Hunter's lending group--but that the allegations of the complaint fail to specify whether Bank of America was acting as trustee, as lender, or both.  I find that this failure to specify capacity does not render the complaint inadequately specific under Rule 9(b). First, the complaint is specific in identifying Mr. Anderson as the person signing agreements on behalf of the Bank of America.  In addition, institutions acting in multiple capacities rarely specify which of their various hats they wear when they act.  It is unreasonable to expect Cimarex to specify in its complaint the particular capacity in which the Bank of America or Mr. Anderson acted.

IT IS ORDERED that the Motion is DENIED.

Dated March 13, 2007.

BY THE COURT:

 s/ Boyd N. Boland
United States Magistrate Judge